Christopher M. Scarbrough, the appellant, was convicted of felony-murder as a lesser included offense of the capital murder of John C. Johnson for which he had been indicted. He was sentenced to life imprisonment. On this appeal from that conviction, the appellant contends that his confession should have been suppressed because there was no probable cause for his arrest and because his confession was the product of an illegal pretextual arrest.
 I.
The victim was murdered in his apartment on January 31, 1990. The police began searching for the appellant the next day after learning that he had been seen around the apartment complex the day of the murder. On March 20, 1990, the officer in charge of the murder investigation had the appellant arrested on a misdemeanor warrant from municipal court for failing to pay a fine. That warrant had been issued in 1988. The appellant was taken to police headquarters where he confessed that he stabbed the victim in an effort to defend himself from the homosexual advances of the victim.
The trial judge termed the use of the municipal warrant to arrest the appellant a "guise" and berated the prosecutor and, to a lesser extent, the testifying officer, even though there had been no attempt by either to mislead the judge about the nature and purpose of the arrest. The trial judge stated:
 "[D]on't come in here with no manipulation about they went and got a traffic warrant for traffic violation. I mean, to hunt for his man, I don't want no nothing like that brought in here to me.
". . . .
 "It's an insult. Because the traffic warrant wasn't just for the other day, was it, for the two or three days before this happened, was it? . . .
". . . .
 "My point is, don't bring — the City sat over there for two years, and then they go and get a warrant that's been on the books two years and get in hot pursuit of this man. That's folly. And don't, you know bring that to me, because it's illogical and it just reeks of things that ought not to be in a court. I'll tell you that. You do what you wish, but if I were a lawyer, I would never do that. I've got the highest respect for the system, and the system ought not ever be manipulated.
 "Here's a man, got a traffic ticket, and had it two — and he hadn't paid the fine in two years, so he becomes a suspect in a murder. And you come in here and tell me that you've got a warrant for him and that's the basis of looking for the man, when the truth is that you're looking for this man because he's a suspect. So say that. . . . If you've got probable *Page 998 
cause, you don't need to go get no — take no specious conduct and go scratch up to see if I can find anything on this man and then use that. That's all I'm saying. We're here for the truth. He was looking for that man because he was a suspect, and let's just say that. . . . All right. Don't bring that to me no more." R. 364-66.
However, it appears that the trial judge deemed the arrest on the misdemeanor warrant[1] legally insignificant because he found that the police had probable cause to arrest the appellant for murder. See Callahan v. State, 557 So.2d 1292, 1302-03
(Ala.Cr.App.) (initial arrest for traffic offense not invalid because there existed probable cause to arrest for murder), affirmed, 557 So.2d 1311 (Ala. 1989), cert. denied,498 U.S. 881, 111 S.Ct. 216, 112 L.Ed.2d 176 (1990). The trial judge stated:
 "He [Officer Duncan] had an obligation. A police officer has got an obligation to follow reliable and trustworthy leads. And the only lead he had at that time was that this man had been there during those hours.
". . . .
 ". . . Well, that's what it was. But it was a reliable one and the only one he had, and therefore he had a duty to go talk to him. . . ."
". . . .
 "I think I made the ruling that this traffic ticket was nothing but a guise. It's been out there two years. But that does not alter the fact that he had in his knowledge reliable, trustworthy information upon which a prudent and reasonable man would have desired to question this man as a suspect. And that's what he did.
". . . .
 "I said that he had probable cause based on information that he had from Deputy Love and some other witnesses. The record will show that. But Deputy Love's information alone would have been sufficient, in my judgment, for a prudent and reasonable man to go question this witness. In fact, I believe I stated for this record in my judgment — and I may be in error, but that's my honest opinion — he had a duty to question this man. He was the only somebody who had been there." R. 400-01, 419-20.
We hold that the appellant's motion to suppress his confession was due to be denied. However, contrary to the findings of the trial judge, we find that there was no probable cause to arrest the appellant for the murder, and that the confession was not the fruit of an unconstitutional pretextual arrest.
 II. Probable Cause to Arrest
Even though the police had an "obligation" to talk to the appellant either as a potential witness or as a suspect, they had no probable cause to arrest him for the commission of the murder.
Birmingham Police Sergeant H.F. Duncan was the investigating officer and the only witness to testify in connection with *Page 999 
the determination of probable cause. From the testimony presented at the hearing on the motion to suppress, at trial, and from our review of Duncan's "incident/offense narratives," we conclude that Duncan was aware of the following facts before the appellant was arrested on the misdemeanor warrant: The victim was murdered sometime after 10:00 a.m. on January 31, 1990. The victim's wife discovered the body around 4:30 that afternoon. Sergeant Duncan interviewed three employees of Century Valley Apartment Complex that day. Those employees were William Love, a deputy sheriff and the night manager of the apartments; maintenance supervisor Richard Minnifield; and Teresia Stovall. He also talked to Melvin Barkum, an apartment resident. From those people he learned that the appellant was a former resident of the apartment complex; that the appellant's vehicle had been towed away from the complex the day of the homicide; that the appellant had been at the apartment complex that afternoon around 1:30 stating that he had come to see his friend, Melvin Barkum; that Mr. Barkum lived in the apartment directly above the victim's; and that an individual dressed in clothing similar to that worn by the appellant had been seen talking to the victim outside the victim's apartment between 2:30 and 3:00 p.m. Mr. Barkum had not seen the appellant since the previous Sunday and knew of no reason why the appellant would have come to see him that day.
Sergeant Duncan began his search for the appellant on February 1, 1990, the day after the homicide. He located and interviewed the appellant's wife on February 7, 1990. She told him that the appellant had been smoking cocaine during the last few months and had stolen $600 from his employer. That theft was determined to have occurred on January 30, 1990. She and the appellant had been seeing each other only sporadically and the appellant had not mentioned anything about the murder.
Sometime during the next several weeks following the homicide, the appellant's wife told Sergeant Duncan that she had told the appellant to call Officer Duncan as Duncan had requested. At trial, Duncan testified that he tried to contact the appellant "many times. . . . [m]ostly through his wife. I kept trying to get her to put him in touch with me, but she did not know his whereabouts." R. 490. The prosecutor represented to the trial judge that nothing the sergeant learned from the wife had any bearing on the probable cause issue. R. 380.
On two different occasions, the appellant had telephoned Duncan's office but had left' no telephone number and had merely left messages that he would call back.
Duncan discovered that there was an outstanding warrant against the appellant. He testified, "I just used a computer. I checked him everywhere I could." R. 475. That warrant had been issued by the Birmingham Municipal Court in 1988 on the charge of failure to pay a fine on a conviction in municipal court for driving without a driver's license. R. 411. On March 20, Duncan had members of the Birmingham Police Department's "fugitive unit" go to the apartment of the appellant's mother and arrest the appellant on the misdemeanor warrant. From his testimony at the hearing on the motion to suppress, it appears that Duncan ordered the warrant executed the same day he discovered its existence. However, at trial Duncan testified, "Well, it was a long time after I had knowledge of [the municipal warrant], sir, before I finally resorted to that [warrant]." R. 476.
The appellant was taken into custody "without incident" on the municipal warrant and was brought to police headquarters where he was interviewed and eventually confessed to the homicide. The appellant denied any knowledge of the murder in his first statement which began at approximately 2:35 p.m. The prosecutor did not attempt to introduce that statement into evidence. The appellant was advised of his Miranda rights a second time at 5:19 p.m. R. 445. In his second statement, the appellant admitted the killing. The appellant maintained that the victim had made homosexual advances towards him, that there was a struggle when the appellant tried to *Page 1000 
escape, and that, in his panic, the appellant stabbed the victim. After his second statement, the appellant was arrested for murder. The interrogation ended at 5:44 p.m.
Although the first statement was not introduced into evidence, it appears that the appellant was fully advised of his Miranda rights before both statements. In addition, on both occasions, the appellant was specifically advised that "it is not necessary that you answer questions posed by a detective or any other Birmingham Police Department official prior to having a bond set by the court." R. 450, 1425. This warning constitutes a part of the printed waiver of rights form signed by the appellant.[2]
It appears undisputed that the municipal arrest warrant was used so that the police could take the appellant into custody and question him. Sergeant Duncan candidly testified: "I asked [the arresting officers] to bring him by headquarters on his way to jail, because I wanted to see if he wanted to talk to me then." R. 419. The sergeant stated that before the appellant confessed to the murder he had no evidence to connect the appellant with the offense. R. 372. He admitted that he "didn't have probable cause to arrest him [for the murder]" (R. 411) and stated that he had no physical evidence to connect the appellant to the crime. Duncan testified that "[p]rior to [the appellant's confession], all I wanted to do was interview him about what he knew about it." R. 416.
Although the appellant challenged the legality of his arrest, he presented no testimony to challenge or contradict the evidence of the voluntariness of his confession presented by the prosecution. The appellant did not testify in his own behalf either at the suppression hearing or at trial.
Contrary to the findings of the trial court, there was no probable cause for the arrest of the appellant for murder. Here, the police knew that they lacked probable cause to arrest the appellant for murder. At trial, the prosecutor argued probable cause (apparently with substantial timidity) only after the trial judge had expressed his indignation over the attempt to justify the arrest on the basis of the municipal warrant. To its credit, on appeal, the State does not argue that the police had probable cause to arrest the appellant for the murder. Apparently, that justification for the appellant's arrest has been abandoned.
Recently, the Alabama Supreme Court defined probable cause:
 "Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act. . . .' ' "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." ' 'Probable cause to arrest is measured against an objective standard and, if the standard is met, it is unnecessary that the officer subjectively believe that he has a basis for the arrest.' The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause." *Page 1001 
Dixon v. State, 588 So.2d 903 (Ala. 1991) (citations to authorities omitted).
Viewing the probable cause evidence in the light most favorable to the State, the information available to the police was that the appellant: 1) was seen talking to the victim, 2) outside the victim's apartment wherein the murder occurred, 3) some unknown length of time before but apparently within two hours of the discovery of the victim's body. The officers also knew that the appellant did not presently reside in the apartment complex and had recently moved from the apartment complex. However, other than the appellant's physical and temporal proximity to the scene of the crime, there were no other facts and circumstances available to the arresting officers at the time of the appellant's arrest tending to connect the appellant to the commission of the murder. There was no evidence that the appellant was seen either entering or leaving the victim's apartment, that the victim and the appellant were arguing, or that there was some hostility between the two men. The information available to the police simply does not rise above suspicion to the required level of probable cause. "While mere presence is never a sufficient basis for a finding of probable cause to arrest, presence when coupled with other circumstances may ripen suspicion into a reasonable belief capable of supporting a finding of probable cause." Campbell v. State, 354 So.2d 325, 327 (Ala.Cr.App. 1977). See also Beck v. State, 485 So.2d 1203, 1206
(Ala.Cr.App. 1984), affirmed, 485 So.2d 1207, 1210-11 (Ala. 1985). "Mere suspicion or good faith on the part of the arresting officer is not sufficient to constitute probable cause for an arrest . . .; common rumor or report, suspicion, or even 'strong reason to suspect' is not adequate . . .; more than a good faith suspicion is required." Knight v. State,346 So.2d 478, 481 (Ala.Cr.App.), cert. denied, 346 So.2d 483 (Ala. 1977). See also Lunsford v. Dietrich, 93 Ala. 565, 570,9 So. 308, 310 (1891) ("These definitions wholly exclude the idea that mere suspicions and belief, however honestly and intensely entertained, unsupported by facts known to the prosecutor which would have justified reasonable and cautious men in believing the accused to be guilty, constitute probable cause."). See generally 44 Am.Jur. Proof of Facts 2d 229, Lack of ProbableCause for Warrantless Arrest (1986). Arrests for "investigations" are condemned. White v. State, 45 Ala. App. 1,2-3, 221 So.2d 117, 118, cert. denied, 284 Ala. 734,221 So.2d 119 (1969). Clearly, "[t]aking a person into custody for questioning on less than probable cause to arrest violates theFourth Amendment to the United States Constitution." Clementsv. State, 390 So.2d 1131, 1135 (Ala.Cr.App.), cert. denied,390 So.2d 1136 (Ala. 1980). "Absent probable cause or judicial authorization, the Fourth Amendment prohibits the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes, which includes interrogation." Cox v. State, 489 So.2d 612, 617-18
(Ala.Cr.App. 1985).
We do agree with the trial judge in his finding that the police had a "duty" or "obligation," required by good police investigative techniques, to talk to the appellant. Clearly, justification for an investigative stop under Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), may be based on "presence near a recently reported crime." Hickman v. State,548 So.2d 1077, 1080 (Ala.Cr.App. 1989). "The standard of reasonable suspicion is less rigorous than the standard of probable cause, . . . requiring only that the officers have 'specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity.' " Lamarv. State, 578 So.2d 1382, 1385 (Ala.Cr.App. 1991). Yet, in this case, reasonable suspicion never ripened into the probable cause before the appellant's arrest.
 III. The Pretextual Arrest
The arrest in this case was based on a "pretext" in the sense that the police used a legal means to gain custody of the appellant in order to question him about a crime for which they had no probable cause to arrest. The appellant argues that his confession should have been suppressed because it was the fruit of an illegal pretextual *Page 1002 
arrest. This is an issue of first impression in Alabama.
It is well established that "[a]n arrest may not be used as a pretext to search for evidence." United States v. Lefkowitz,285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932). A pretextual arrest has been defined as "the use of some minor offense, typically a traffic violation, as a tool for obtaining evidence or statements relating to a greater offense for which the police lack the required probable cause or reasonable suspicion otherwise to obtain." Jonas, Pretext Searches and theFourth Amendment: Unconstitutional Abuses of Power, 137 U.Pa.L.Rev. 1791, 1792 n. 5 (1989).
This case does not involve a "fabricated" pretext, for here, if the motivation of the police is not considered, the appellant's arrest was legal because it was pursuant to a warrant. See Butterfoss, Solving the Pretext Puzzle: TheImportance of Ulterior Motives and Fabrications in the SupremeCourt's Fourth Amendment Pretext Doctrine, 79 Ky.L.J. 1, 5-6 (1990-91); Jonas, 137 U.Pa.L.R. at 1802-03. This is not a case where there was no probable cause or judicial authorization to arrest the appellant for any offense. Furthermore, this case involves the execution of a pre-existing arrest warrant and not a traffic stop following surveillance of the suspect. See Salken, The General Warrant of the Twentieth Century? AFourth Amendment Solution to Unchecked Discretion to Arrest forTraffic Offenses, 62 Temp. L.Q. 221 (1989).
"Pretextual police conduct has a long history as a vexing and persistent fourth amendment problem." Note, The Pretext ProblemRevisited: A Doctrinal Exploration Of Bad Faith In Search AndSeizure Cases, 70 B.U.L.Rev. 111 (1990) (footnote omitted). See also Burkoff, The Pretext Search Doctrine Returns After NeverLeaving, 66 U.Det.L.J. 363 (1989); Note, Pretextual Arrests andAlternatives to the Objective Test, 12 W.New Eng.L.Rev. 105 (1990); Comment, When Probable Cause is ConstitutionallySuspect: The Status of Pretext Arrests and Searches inWisconsin, 1991 Wis.L.Rev. 345 (1991), and the other law review articles cited above. See also 1 W. LaFave, Search and Seizure
§ 1.4(e) (2d ed. 1987); 2 id. § 5.2(e). There is even authority that the " 'pretext arrest' doctrine" is the "illegitimate off-spring of Lefkowitz" and is without legal or logical support. State v. Garcia, 794 S.W.2d 472, 477
(Tex.App. 1990).
 "That case is invariably cited, misinterpreted and misapplied by the proponents of the doctrine with great persistence. Beyond that, the authority for the doctrine's existence consists of rejected points of error, dissents and overruled opinions. The doctrine was and is without authoritative support.
". . . .
 "Returning to the general categories of situations in which the 'pretext arrest' doctrine typically arises [traffic violations], we find the theory unnecessary and irrelevant to the constitutional and statutory interests involved. In the case of stops based upon some offense, such as a traffic violation, committed in the officer's view, the officer's prior suspicions and subjective intent, as well as his objective conduct, are relevant in terms of the credibility of the allegation that the stop offense actually occurred. If the fact finder concludes that such stop offense did not occur, suppression is in order without resort to any so-called 'pretext arrest' doctrine. Any characterization of the officer's conduct as 'pretextual' is superfluously and hyperbolically descriptive, but not legally dispositive. On the other hand, if the fact finder concludes that the stop offense did occur and the officer does not objectively violate some other Fourth Amendment or statutory restriction, . . . then his earlier additional suspicions and motivations are irrelevant. . . . Proponents of the 'pretext arrest' doctrine seek to translate the subjective mental state of the officer into an objective legal standard by which they can circumvent a fact-finding process in which they apparently have little faith. *Page 1003 
In doing so, they erode an admirable process from within."
Garcia, 794 S.W.2d at 477-78.
The United States Supreme Court has never directly confronted the issue of pretextual arrests.[3] "[G]iven the diametrically opposed interpretations of the fourth amendment reflected in the decisions of the various circuits and the frequency with which the issue arises, clarification is badly needed." United Statesv. Kordosky, 878 F.2d 991, 995 (7th Cir. 1989) (Will, J., concurring), vacated on other grounds, 495 U.S. 916,110 S.Ct. 1943, 109 L.Ed.2d 306 (1990). "[R]ecent cases interpreting pretextual arrest in the context of circumstances similar to those involved here [arrest on a warrant for a different crime] indicate a clear conflict among the Federal circuits." Peoplev. Hattery, 183 Ill. App.3d 785, 132 Ill.Dec. 58, 77,539 N.E.2d 368, 387 (reviewing conflicting positions), appeal denied, 127 Ill.2d 627, 136 Ill.Dec. 596, 545 N.E.2d 120 (1989). See also State v. Olaiz, 100 Or. App. 380,786 P.2d 734, 738-40 (Warren, J., dissenting, discussing the various approaches of the federal circuit courts of appeal), review denied, 310 Or. 122, 794 P.2d 793 (1990).
 However, the Supreme Court has held "that if there is an objective legal basis for an arrest or search, the arrest or search is lawful even if the officer making the arrest or conducting the search based his or her action on the wrong ground or had an improper motive. See, e.g., Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). Illustrative cases of this court include State v. Rodewald, 376 N.W.2d 416, 421 (Minn. 1985), and State v. Pleas, 329 N.W.2d 329, 332 (Minn. 1983). As at least one commentator has noted, 'The United States Supreme Court has never struck down police activity as unconstitutional based on the subjective intentions of the officer in the particular case and is unlikely to do so in the near future.' Butterfoss, Solving the Pretext Puzzle, 79 Ky.L.J. 1, 58 (1990). On a case-by-case basis the Supreme Court declares only fabricated pretexts unlawful. 'Legal' pretexts — i.e., activities which can be legally justified if the actual reason for the conduct is put aside — consistently pass constitutional muster. Id."
State v. Everett, 472 N.W.2d 864, 867 (Minn. 1991).
Although, a "hint" of this issue is found in several reported Alabama cases, the issue of a legal, as opposed to fabricated, pretextual arrest or search has not been addressed in this state. See Jones v. State, 513 So.2d 8, 13 (Ala.Cr.App. 1986) ("a search which reasonably ensues after a legal arrest is proper, without regard to *Page 1004 
whether there is a nexus between the offense in question and the object sought"); Files v. State, 468 So.2d 190, 194-95
(Ala.Cr.App. 1984) ("Although the evidence was to the effect that Officer Tucker intended to arrest appellant for public intoxication, the actual discovery by the officers of the controlled substance was in the process of their understandably and legally endeavoring to separate, one from the other, the two participants in an apparent breach of the peace, which came within their authority and duty as law enforcement officers."), cert. denied, 468 So.2d 196 (Ala. 1985); Daniels v. State,416 So.2d 760, 765 (Ala.Cr.App. 1982) ("There is nothing to indicate that [taking the defendant to the police station to obtain a traffic ticket complaint form] was done as a ruse or subterfuge in order to justify the removal of the defendant from the automobile and excuse a subsequent search.").
In Callahan v. State, 557 So.2d at 1302-03, this Court was concerned with the issue of an alleged fabricated pretext or reason (improper vehicle license tag) for arresting the defendant where the "primary reason" for the stop was because the defendant was a suspect in a murder. This Court found that at the time of the arrest, there existed probable cause to arrest the defendant for murder, and held:
 " ' "When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." . . .
 "The arrest of Callahan for the improper tag was not a pretext in the sense of it being a sham or a fraud because it was supported by probable cause. . . . Because there was probable cause to arrest Callahan for Ms. Howell's abduction and murder, we find that any impropriety in his 5:00 A.M. arrest did not render Callahan's statements inadmissible under the Fourth Amendment."
Callahan, 557 So.2d at 1302-03.
In Carruth v. Barker, 454 So.2d 539, 540 (Ala. 1984), the Alabama Supreme Court held that "[w]hen considering whether an arrest is valid, a police officer's subjective intent is immaterial; the only requisite is that at the time the arrest is made, the police have probable cause." Accord, Brooks v.City of Dothan Police Department, 562 So.2d 162, 163 (Ala. 1990). However, Brooks and Carruth involved civil actions for unlawful arrest and false imprisonment. The question in each case was whether the circuit court's granting the defendants' motions for summary judgment was proper. Neither case involved a pretextual arrest.
Under the "objective" test employed by the United States Court of Appeals for the Fifth Circuit, the arrest in this case was constitutional. The facts of United States v. Causey,834 F.2d 1179 (5th Cir. 1987), are, in all material respects, identical to those presented here. In that case the police suspected that Causey had been involved in a bank robbery. Realizing that they did not have probable cause to arrest him for robbery, the police discovered a seven-year-old warrant against Causey for failing to appear on a misdemeanor theft charge. After a judge determined that the warrant was still valid, Causey was arrested on the misdemeanor default warrant and taken to the police station, where he was advised of hisMiranda rights, questioned, and confessed. Causey argued that his arrest was an illegal pretext because the police admitted that their only reason for arresting Causey was to continue the robbery investigation.
Initially, a three-judge panel of the federal circuit court of appeals held that Causey's arrest was an illegal pretext and ordered his confession suppressed. United States v. Causey,818 F.2d 354 (5th Cir. 1987). That decision was reversed by the court en banc in United States v. Causey, 834 F.2d 1179 (5th Cir. 1987).
 "Again and again, in precisely the present context, the [Supreme] Court has told us that where police officers are objectively doing what they are legally authorized to do — as in arresting Causey pursuant to the valid warrant outstanding against him and interrogating him without *Page 1005 
coercion after reading him repeated Miranda warnings — the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted. . . .
 ". . . The relevant principle of the Supreme Court is likewise: so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry. . . . The correct rule is that, while a showing of objectively reasonable good faith on the part of police officers will ordinarily redeem honest errors and prevent the application of the exclusionary rule, in a case where the officers have taken no action except what the law objectively allows[,] their subjective motives in doing so are not even relevant to the suppression inquiry. And the reason lies in the purpose of that rule: to deter unlawful actions by police. Where nothing has been done that is objectively unlawful, the exclusionary rule has no application and the intent with which they acted is of no consequence.
 "Causey's complaint that his conviction should be reversed because the subjective intent of the police in arresting him was improper is therefore rejected."
United States v. Causey, 834 F.2d 1179, 1184-85 (5th Cir. 1987) (emphasis in original) (footnotes omitted). We find that "objective" test to have merit and adopt it as the standard to be employed in determining the legality of arrests in Alabama. See also United States v. Hernandez, 901 F.2d 1217, 1219 (5th Cir. 1990); United States v. Gallo, 927 F.2d 815, 818 (5th Cir. 1991); United States v. Trigg, 925 F.2d 1064, 1065 (7th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 428, 116 L.Ed.2d 448, 449
(1991); United States v. D'Antoni, 856 F.2d 975, 979 (7th Cir. 1988); United States v. Cummins, 920 F.2d 498, 500-01 (8th Cir. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 428,116 L.Ed.2d 448, 449 (1991); State v. Gerald, 113 N.J. 40, 549 A.2d 792,827 (1988).
We recognize that under the "subjective" test employed by the Eleventh Circuit Court of Appeals, the arrest in this casemight[4] be unconstitutional. The test employed by the Eleventh Circuit is set out in United States v. Valdez, 931 F.2d 1448,1450 (11th Cir. 1991).
 "When a defendant raises such a claim of pretextuality, 'the proper inquiry is whether a reasonable officer would have made the seizure in the absence of illegitimate motivation,' [United States v.] Smith, [799 F.2d 704, 708 (11th Cir. 1986)] (emphasis in original), and requires ' "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," and not on the officer's actual state of mind at the time of the challenged action taken.' Id. at 709, quoting Maryland v. Macon, 472 U.S. 463, 470-71, 105 S.Ct. 2778, 2782-83, 86 L.Ed.2d 370. '[I]n determining when an investigatory stop is unreasonably pretextual, the proper inquiry, again, is not whether the officer could validly have made the stop but whether under the same circumstances a reasonable officer would
have made the stop in the absence of the invalid purpose.' Smith at 709 (emphasis in original), citing and relying upon United States v. Cruz, 581 F.2d 535 (5th Cir. 1978) (en banc). . . . As to Cruz, Judge Kravitch wrote in Smith that '[t]he stop [in Cruz] was unreasonable not because the officer secretly hoped to find evidence of a greater offense, but because it was clear that an officer would have been uninterested in pursuing the lesser offense absent that hope.' Id. at 710."
That subjective test was rejected in Causey.[5]
The case of United States v. Trigg, 878 F.2d 1037 (7th Cir. 1989), contains a succinct *Page 1006 
discussion of the various approaches taken to the problem of pretextual arrests and concluding.
 "[W]e believe that the reasonableness of an arrest depends upon the existence of two objective factors. First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense. Second, was the arresting officer authorized by state and or municipal law to effect a custodial arrest for the particular offense. If these two factors are present, we believe that an arrest is necessarily reasonable under the fourth amendment. This proposition may be stated in another way: so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitution. See United States v. Causey, 834 F.2d 1179, 1182 (5th Cir. 1987) (en banc)."
Trigg, 878 F.2d at 1041.
We agree with the Texas Court of Appeals in its conclusion that the doctrine is also illogical and unworkable:
 "If lack of legal authority be insufficient for its final demise, we suggest that the doctrine is also illogical and unworkable as a guiding principle to be followed by the officers on the street or the courts in trial. What if the legislature sought to embody the doctrine in statutory form:
 "If an officer performs a valid arrest for one criminal violation, conducts a search incident to such arrest which is proper in scope, and in the course of such search discovers evidence of some other crime, that evidence is admissible in court as long as:
 "(a) The officer did not already suspect and wish to investigate the other offense; and
 "(b) The stop offense is not trivial in comparison to the other offense suspected.
 "The present proponents of the doctrine would undoubtedly fight for first position in line to challenge such a statute as unconstitutionally vague. How can an officer apply such a standard on the street? Verging on metaphysics, we question whether any actual offense committed in the officer's view can ever be deemed trivial in relation to a suspected offense in which there is not even a sufficient basis for a Terry stop. If trailing a suspected murderer, must the officer ignore all violations trivial in comparison to murder? What degree of difference is indicated by the characterization of 'trivial'? . . ."
Garcia, 794 S.W.2d at 477.
Here, the police did no more than they were legally entitled to do. They were authorized to take the appellant into custody on the basis of the misdemeanor arrest warrant. Once the appellant was in custody, the police were entitled to inquire whether the appellant would talk to them about the murder. The conduct of the police was objectively reasonable. Applying the objective test and relying on Causey, supra, we conclude that the appellant's arrest did not constitute a violation of thefourth amendment.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Sergeant Duncan, the police officer in charge of the investigation, testified that he told the arresting officers to get the misdemeanor warrant so he "assume[d]" that they had the warrant in their possession when they arrested the appellant. R. 417. When asked, "Where is the warrant now?" he testified: "It would have gone through channels. I assume that the court has it." R. 417. Defense counsel cited Ex parte Talley,479 So.2d 1305 (Ala. 1985), on the record, apparently arguing that the arrest was illegal because the officers did not have the misdemeanor warrant in their possession. See R. 435. Talley held that "[f]or an arrest to be valid on a misdemeanor offense which was not witnessed by the arresting officer, the officer must have an arrest warrant in his possession at the time of the arrest." 479 So.2d at 1306. However, Talley was decided on the basis of former Ala. Code 1975, § 15-10-3(1). Effective May 17, 1989, more than eight months before the instant offense, §15-10-3 was amended. The amended version provides, in pertinent part, that "[a]n officer may arrest any person without awarrant, on any day and at any time . . . [w]hen he has actual knowledge that a warrant for the person's arrest for the commission of a felony or misdemeanor has been issued, provided such warrant was issued in accordance with the provisions of this chapter." Ala. Code § 15-10-3(a)(6) (Supp. 1990) (emphasis added). The officers in this case clearly had actual knowledge that the misdemeanor warrant had been issued. The question of the validity of the issuance of the warrant was not raised at trial and is not advanced on appeal.
[2] The printed waiver of rights form signed by the appellant listed the following rights:
"1. You have the right to remain silent.
 "2. Anything you say can and will be used against you in a court of law.
 "3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
 "4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish one.
 "5. If you wish to answer questions now without a lawyer present you still have the right to stop answering at any time.
 "6. It is not necessary that you answer questions posed by a detective or any other Birmingham Police Department official, prior to having a bond set by the court." R. 1425.
[3] In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301,110 L.Ed.2d 112 (1990), a majority of the United States Supreme Court held that the Fourth Amendment does not prohibit the warrantless seizure of evidence of a crime that is in plain view, even if the discovery of that evidence was not inadvertent. Justice Brennan dissented and was joined by Justice Marshall:
 "Fortunately, this decision should have only a limited impact, for the Court is not confronted today with what lower courts have described as a 'pretextual' search. See, e.g., State v. Lair, 95 Wn.2d 706, 717-718, 630 P.2d 427, 434 (1981) (en banc) (holding pretextual searches invalid). For example, if an officer enters a house pursuant to a warrant to search for evidence of one crime when he is really interested only in seizing evidence relating to another crime, for which he does not have a warrant, his search is 'pretextual' and the fruits of that search should be suppressed. See, e.g., State v. Kelsey, 592 S.W.2d 509
(Mo.App. 1979) (evidence suppressed because officers, who had ample opportunity to obtain warrant relating to murder investigation, entered the premises instead pursuant to a warrant relating to a drug investigation, and searched only the hiding place of the murder weapon, rather than conducting a 'top to bottom' search for drugs). Similarly, an officer might use an exception to the generally applicable warrant requirement, such as 'hot pursuit,' as a pretext to enter a home to seize items he knows he will find in plain view. Such conduct would be a deliberate attempt to circumvent the constitutional requirement of a warrant 'particularly describing the place to be searched, and the persons or things to be seized,' and cannot be condoned.
 "The discovery of evidence in pretextual searches is not 'inadvertent' and should be suppressed for that reason. . . . The Court's opinion today does not address pretextual searches, but I have no doubt that such searches violate the Fourth Amendment."
496 U.S. at 147-48, 110 U.S. at 2313-14.
[4] In this case, the trial judge did not allow the prosecution to attempt to justify the arrest on the municipal warrant, but informed the prosecutor that that warrant was not necessary since there was probable cause for the appellant's arrest.
[5] We note that in this case, in condemning the appellant's arrest as pretextual, the trial judge had to apply a "subjective" test, while he applied an "objective" test in finding that the arrest was supported by probable cause.