This case was originally assigned to another judge on the Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
Steve D. Webster, the appellant, pleaded guilty to and was convicted of unlawful possession of a controlled substance, a violation of § 13A-12-212 Ala. Code, 1975. His sentence of five years in the penitentiary was split, and he was ordered to serve three years in the penitentiary and the remainder *Page 921 
on probation. He reserved the right to appeal the denial of his motion to suppress evidence of the cocaine discovered in his vehicle on the grounds that it was the fruit of an illegal search. The substance of the appellant's argument on appeal is that the appellant's arrest, the impounding of his automobile, and the inventory search of his automobile were all done in bad faith for the sole purpose of investigating an informant's tip that the appellant was in possession of a large quantity of cocaine.
Detective Billy J. McCollough of the Montgomery Police Department's narcotics and intelligence bureau was informed by a reliable confidential informant that the appellant was selling drugs at a specific time and location. McCollough discovered that the appellant was subject to three outstanding capias arrest warrants for the misdemeanor of failure to pay municipal court fines. The municipal court confirmed this information and issued the warrants. "Once the capias warrant was issued, the officers were authorized to take the appellant into custody on that warrant." Fletcher v. State,621 So.2d 1010, 1023 (Ala.Cr.App. 1993). Section 15-10-3(a)(6), Ala. Code 1975, as amended May 17, 1989, provides that "(a) An officer may arrest any person without a warrant, on any day and at any time . . . (6) When he has actual knowledge that a warrant forthe person's arrest for the commission of a felony ormisdemeanor has been issued. . . ."
McCollough went to the location described by the informant with Officer O.D. Perkins and a police dog trained to detect narcotics. The appellant was sitting on the hood of his automobile, which was parked in a parking lot of a housing project known for its persistent crime problems. McCollough immediately informed the appellant that he was under arrest pursuant to the arrest warrants. R. 93. At the time of the arrest, the appellant's automobile was unlocked and the windows were rolled down. A cellular telephone, a leather jacket, and other valuable items were inside. The narcotics detection dog accompanying McCollough "alerted" at the driver's door. "An 'indication' by a trained drug detection dog has been held to constitute probable cause to search" an automobile without a warrant. Ynosencio v. State, 629 So.2d 795, 798
(Ala.Cr.App. 1993) ("This exception applies even if the automobile is parked and stationary when the officers find it."). The officers testified that they wanted to "get out of the project" as quickly as possible for their "own safety," because, they said, typically, in this housing project, if police officers effect an arrest, a crowd gathers and "rocks are thrown" at the police officers. R. 64. They decided to take the appellant to McCollough's headquarters at the narcotics bureau located around the corner from the site of the arrest for booking and to impound the appellant's vehicle in order to conduct a search for drugs based on the probable cause created by the police dog's "alert" and for the vehicle's safekeeping. The appellant allowed McCollough to remove his car keys from his pocket so McCollough could drive the vehicle to the police station. At the station, the police dog was put inside the appellant's vehicle to search for drugs but "the dog didn't alert on the interior of the car." R. 67. Officer O.D. Perkins was advised by McCollough to "go ahead and do a vehicle inventory search" while the paperwork on the arrest warrant was conducted. R. 67. Perkins said that when he was inventorying the contents of the vehicle he was no longer searching for drugs. R. 69. Officer Perkins testified that when he reached behind the front seat to get a leather jacket that was in the car he "knocked the cover of the seatbelt rotor dispenser off," revealing a plastic baggie containing what appeared to be cocaine. R. 70. At that time the warrants pursuant to which he had been arrested were put aside and the appellant was charged with possession of a controlled substance. R. 15.
 "In Scarbrough [v. State, 621 So.2d 996
(Ala.Cr.App. 1992)], we adopted the 'objective' test set forth by the Fifth Circuit Court of Appeals with regard to determining the validity of an alleged pretextual arrest:
 " ' "Again and again in precisely the present context, the [Supreme] Court has told us that where police officers are objectively doing what they are legally authorized to do — as in arresting [the defendant] pursuant to the valid warrant *Page 922 
outstanding against him and interrogating him without coercion after reading him repeated Miranda warnings — the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted
. . .
 " ' ". . . The relevant principle of the Supreme Court is likewise: so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry. . . . The correct rule is that, while a showing of objectively reasonable good faith on the part of the police officers will ordinarily redeem honest errors and prevent the application of the exclusionary rule, in a case where the officers have taken no action except what the law objectively allows[,] their subjective motives in doing so are not even relevant to the suppression inquiry. And the reason lies in the purpose of that rule: to deter unlawful actions by police. Where nothing has been done that is objectively unlawful, the exclusionary rule has no application and the intent with which they acted is of no consequence."
" '. . . .
 "United States v. Causey, 834 F.2d 1179, 1184-85
(5th Cir. 1987) (emphasis in original) (footnotes omitted).' Scarbrough, 621 So.2d at 1004. In this case, as in Scarbrough, 'the police did no more than they were legally entitled to do.' Id. at 1006. [The] investigator . . . checked with the municipal clerk/magistrate to see if there were any outstanding warrants on the appellant. Although there were no outstanding warrants, it is clear that the appellant was in violation of his probation at that time. In fact the municipal clerk/magistrate testified that the capias warrant should have been issued 'a long time ago.' R. 766. Once the capias warrant was issued, the officers were authorized to take the appellant into custody on that warrant. After the appellant was in custody, his finger and palm prints were justifiably taken as part of the booking process. See 2 W. LaFave, Search and Seizure § 5.3(c) at 498 (2d ed. 1987). Consequently, we find that 'the conduct of the police was objectively reasonable.' Scarbrough v. State, 621 So.2d 996."
Fletcher v. State, 621 at 1022-23.
The appellant was subject to a lawful arrest pursuant to the capias warrants issued by the municipal court. The police dog's "alert" also created probable cause to search the automobile without a warrant. Ynosencio, supra. Because the safety of the police officers was in question, moving the investigation to the police station to conduct an authorized search based on the "alert" did not prejudice the rights of the appellant. The examination of the car by the police dog at the station was no more intrusive than it would have been had it occurred at the scene of arrest. Furthermore, the cocaine was not discovered during the examination by the police dog, the appellant suffered no prejudicial harm resulting from the examination, and the examination had no significance in the later legal discovery of the cocaine.
The impoundment of the appellant's automobile was legal under the facts of this case without the requirement that there was, at the time of the impoundment, probable cause to believe that illegal drugs where inside the vehicle. "Impoundment has . . . been justified on the grounds that it is necessary to protect the vehicle from damage and the police from liability."Morton v. State, 452 So.2d 1361, 1366 (Ala.Cr.App. 1984), (overruled by Cannon v. State, 601 So.2d 1112, 1115
(Ala.Cr.App.) "to the extent that Morton holds that a driver must be given an election on whether to have his vehicle impounded or left where parked," cert. denied, 601 So.2d 1112
(Ala. 1992)). In United States v. Martin, 982 F.2d 1236, 1240
(8th Cir. 1993), the court found the impoundment of a legally parked vehicle proper where the owner left the scene for a "suspicious length of time despite his promise to return, making it likely that no one would claim custody of the unlocked vehicle, which had valuable equipment inside in plain view." The Eighth Circuit Court in Martin stated that "[p]olice may take protective custody of a vehicle when they have arrested its occupants, see *Page 923 Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738,93 L.Ed.2d 739 (1987), even if it is lawfully parked and poses no public safety hazard. See United States v. Staller, 616 F.2d 1284,1289-90 (5th Cir.), cert. denied, 449 U.S. 869, 101 S.Ct. 207,66 L.Ed.2d 89 (1980)." Martin, 982 F.2d at 1240. In UnitedStates v. Ponce, 8 F.3d 989, 996 (5th Cir. 1993), the Fifth Circuit Court of Appeals concluded that the "district court did not err in concluding that [the police officer] 'acted appropriately and legally when he decided to impound and inventory [the appellant's] truck' " where the appellant's truck was properly parked in the parking lot of the parole office, because impounding the automobile "ensured that the truck was not left in a public parking lot where it could have become a nuisance, and where it could have been damaged or stolen." Ponce, 8 F.3d at 996. Cf. Riley v. State,583 So.2d 1353, 1355 (Ala.Cr.App.), cert. denied, 583 So.2d 1356
(Ala. 1991) (vehicle improperly impounded where "there is no indication in the record that the impoundment of the vehicle was necessary to protect the vehicle from damage or to protect the police from liability").
McCollough testified that it is "not always" the policy of the Montgomery Police Department to impound an arrested individual's vehicle. "In some cases the [arrested] person will advise [us that] the car [belongs to the arrested person's] mother or . . . brother. . . . [I]f these people can present a valid ID, a driver's license, we would [release the car to them]; if not, we impound the car." R. 41-42. "[T]hose are the procedures which we use." R. 45. McCollough testified that, "[o]nce we arrest[ed] the [appellant] . . . [his] car was left unsecured. [The police department is] responsible for the car, and due to the area, [a] high drug area, and the things that could possibly happen to this vehicle, it's our responsibility to see that this gentleman's car is in good care." R. 39. McCollough testified that when he told the appellant that they were going to take his vehicle, the appellant "lifted his body up like this (indicating) for me to get the keys out of his pocket" R. 44.
Because the automobile and its contents would have been in jeopardy if left unattended in its location, because there was no one at the scene to entrust its care to, and because the record does not show that the appellant protested the removal of the car, we conclude that impounding the appellant's vehicle was proper and that no further justification was necessary.
The inventory search conducted pursuant to the impoundment of the vehicle that resulted in the discovery of illegal drugs was legal. McCollough's testimony sufficiently reflected police policy regarding inventory searches "in such a way that itsreasonableness can be reviewed, and present[ed] adequate evidence of what the employed criteria were." Ex parte Boyd,542 So.2d 1276, 1283, cert. denied, 493 U.S. 883,110 S.Ct. 219, 107 L.Ed.2d 172 (1989) (Ala.) emphasis in original). McCollough testified as follows:
 "Anytime we have a vehicle we must put any personal property of value into impound because once the person gets out of jail and want[s] their property it will be in safekeeping. . . . Once you prepare to impound the vehicle you have to do an inventory slip on the vehicle. . . . [an inventory list is kept] as part of [the] case file. . . . Once we retrieve personal property from a vehicle it is our procedure to impound the property at the police headquarters for safekeeping there for the defendant to pick up after release from jail; or if it's physical evidence we will use it as part of the evidence in court. . . . In this case one cellular telephone, one leather jacket, black in color, one Loren .380 caliber pistol, SN 221814, one magazine .380 Loren rounds, twenty-two .380 rounds, one box of fifty-eight nine millimeter rounds, one nine millimeter magazine, and one hand scale in a black case [was inventoried]. . . . This particular document is the impound report number which we use once we impound the vehicle at Boyette [towing service], which is the company we use. This particular sheet identified the vehicle, who was driving — who was in possession of the vehicle at the time, and also . . . the owner of the vehicle and the officer impounding it, you know, giving the authorization to impound it. And it shows the firm, which is Boyette, in this particular case, and the time it *Page 924 
was turned over to the wrecker driver." R. 15-19.
The inventory slip was presented at trial. See Sheffield v.State, 606 So.2d 183, 187 (Ala.Cr.App. 1992) ("the absence of an inventory list and the fact that inventories are not uniformly conducted throughout the police department involved lend support to an inventory's not qualifying as a lawful search" (citing Ex parte Boyd, 542 So.2d at 1283)). Officer Perkins testified that the inventory search began about 10 minutes after they arrived at the police station. R. 73. Officer McCollough testified that the appellant's grandfather had arrived and that he was preparing to release the vehicle to the grandfather when he was informed that drugs were found inside the vehicle. R. 48. These comments indicate that it is standard procedure in the Montgomery Police Department to prepare an inventory of the contents of all impounded vehicles. This is adequate to ensure against arbitrary searches and those conducted under false pretenses.
The trial court correctly overruled the appellant's motion to suppress the evidence seized pursuant to his lawful arrest. The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 925 
[EDITORS' NOTE: PAGES 925-929 CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 1121